FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| OREGON PRESCRIPTION DRUG MONITORING PROGRAM, an agency of the State of Oregon,<br>    *Plaintiff-Appellee*,<br><br>ACLU FOUNDATION OF OREGON, INC.; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JAMES ROE, M.D.,<br>    *Intervenor-Plaintiffs-Appellees*,<br><br>v.<br><br>U.S. DRUG ENFORCEMENT ADMINISTRATION, Defendant in Intervention,<br>    *Defendant-Appellant*. | No. 14-35402<br><br>D.C. No. 3:12-cv-02023-HA<br><br>OPINION |

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, Senior District Judge, Presiding

Argued and Submitted November 7, 2016
Submission Withdrawn January 30, 2017
Resubmitted June 26, 2017
Portland, Oregon

Filed June 26, 2017

Before:  M. Margaret McKeown, William A. Fletcher, and Raymond C. Fisher, Circuit Judges.

Opinion by Judge McKeown

### SUMMARY[*]

**Subpoenas / Standing**

The panel reversed the district court's order that the United States Drug Enforcement Administration's use of administrative subpoenas issued against Oregon's Prescription Drug Monitoring Program violated intervenors' privacy interests; held that the intervenors lacked Article III standing to seek relief different from that sought by Oregon; and held that the federal administrative subpoena statute, 21 U.S.C. § 876, preempted Oregon's statutory court order requirement, Or. Rev. Stat. § 431A.865.

After the DEA issued two administrative subpoenas to the Prescription Drug Monitoring Program, Oregon brought a declaratory judgment action, seeking a declaration that it could not be compelled to disclose an individual's health information to the DEA unless ordered by a federal court. Intervenors, who consisted of the ACLU Foundation of Oregon and five individuals, brought a claim distinct from Oregon's, namely that the DEA's use of administrative subpoenas violated intervenors' asserted Fourth Amendment rights in certain private health information.  The district

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

court granted the motion to intervene, and held that the DEA's use of administrative remedies constituted a Fourth Amendment violation.

The panel held that the intervenors must establish independent standing because they sought relief different from that sought by Oregon, the plaintiff.  Specifically, the panel held that Oregon's basis for relief rested on a state-law procedural argument, whereas, intervenors' claim for relief was founded on the Fourth Amendment and its requirement of probable cause.  The panel concluded that the intervenors did not establish independent Article III standing, and therefore, they lacked standing to bring their Fourth Amendment claim and their related Administrative Procedure Act claim.

The panel rejected Oregon's claim that its statutory requirement for a court order in all cases in which a subpoena was issued did not conflict with federal law.  The panel held that the Oregon statute stood as an obstacle to the full implementation of the federal Controlled Substances Act, and consequently the two provisions were in positive conflict, and Or. Rev. Stat. § 431A.865 was preempted by 21 U.S.C. § 876.

## COUNSEL

Samantha Lee Chaifetz (argued) and Mark B. Stern, Attorneys, Appellate Staff; Beth S. Brinkmann, Deputy Assistant Attorney General; Joyce R. Branda, Acting Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Defendant-Appellant.

Dustin Beuhler (argued), Salem, Oregon, for Plaintiff-Appellee.

Nathan Freed Wessler (argued) and Ben Wizner, American Civil Liberties Union Foundation New York, New York; Kevin Diaz, Compassion & Choices, Portland, Oregon; for Intervenor-Plaintiffs-Appellees.

Priscilla Joyce Smith, Law Offices of Priscilla Smith, Brooklyn, New York, for Amicus Curiae Yale Law School Information Society Project.

Roy Pulvers, Holland & Knight LLP, Portland, Oregon, for Amici Curiae Oregon Medical Association, American Medical Association, Alaska State Medical Association, Arizona Medical Association, California Medical Association, Hawaii Medical Association, Idaho Medical Association, Montana Medical Association, Nevada State Medical Association, and Washington State Medical Association.

## OPINION

McKEOWN, Circuit Judge:

As part of its oversight of drugs subject to the Controlled Substances Act ("CSA"), the United States Drug Enforcement Administration ("DEA") regularly issues investigative subpoenas. Those subpoenas are issued without prior approval by a court. In response to two recent subpoenas, Oregon's Prescription Drug Monitoring Program ("Oregon," the "Oregon Program," or "PDMP") sought a declaratory judgment that, under state law, the DEA must obtain a court order to enforce the subpoenas. The Oregon Program did not claim, however, that the DEA must obtain a warrant backed by probable cause.

The ACLU Foundation of Oregon and five individuals (collectively "Intervenors") intervened, arguing that the DEA's use of subpoenas violates their Fourth Amendment rights. They sought declaratory and injunctive relief prohibiting the DEA from obtaining prescription records from the PDMP without a warrant supported by probable cause. The district court did not analyze whether Intervenors have standing to bring this claim. Instead, it reached the merits of the Fourth Amendment claim and found that the DEA's use of administrative subpoenas violated privacy interests asserted by Intervenors in certain prescription information. We reverse without reaching the merits of the Fourth Amendment claim because Intervenors lack Article III standing to seek relief different from that sought by Oregon. Just this month the Supreme Court clarified this independent standing requirement for intervenors. *See Town of Chester v. Laroe Estates*, No. 16-605, slip op. at 6 (U.S. June 5, 2017) ("[A]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing."). We also

hold that the federal administrative subpoena statute, 21 U.S.C. § 876, preempts Oregon's statutory court order requirement, Or. Rev. Stat. § 431A.865.[1]

## Background

### I. The Controlled Substances Act

Congress enacted the CSA as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970. 21 U.S.C. § 801 *et seq.*; *Gonzales v. Raich*, 545 U.S. 1, 12 (2005). The CSA's main objectives are "to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." *Gonzales*, 545 U.S. at 12. To achieve these goals, Congress established a "comprehensive regime" that makes it unlawful to manufacture, distribute, dispense, or possess any controlled substance except as authorized by the CSA. *Id.* at 12–13 (citing 21 U.S.C. §§ 841(a)(1), 844(a)). Controlled substances are categorized into five schedules based on the drugs' potential for abuse, accepted medical uses, and likelihood of causing psychological or physical dependency. 21 U.S.C. § 812.

Under the CSA, the Attorney General is authorized to issue administrative subpoenas to investigate drug crimes:

> In any investigation relating to his functions under this subchapter [Subchapter I—Control and Enforcement] with respect to controlled substances . . . the Attorney General may subp[o]ena witnesses, compel the attendance and testimony of witnesses,

---

[1] In 2015, the Oregon Legislative Counsel renumbered Or. Rev. Stat. § 431.966 as Or. Rev. Stat. § 431A.865.

> and require the production of any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to the investigation.

21 U.S.C. § 876(a). This authority has been delegated to the DEA. *See* 28 C.F.R. § 0.100. Section 876(c) provides for judicial enforcement of subpoenas issued under § 876(a): "In the case of contumacy by or refusal to obey a subp[o]ena issued to any person, the Attorney General may invoke the aid of any court of the United States within the jurisdiction of which the investigation is carried on . . . to compel compliance with the subp[o]ena."

**II. The Oregon Program**

The Oregon PDMP is operated by the Oregon Health Authority, which maintains records about prescriptions of drugs classified in Schedules II–IV under the CSA. Or. Rev. Stat. § 431A.855. When pharmacies in Oregon dispense a covered prescription drug, they are required to report electronically to the PDMP, among other things, the patient's name, address, date of birth, and sex; the dispensing pharmacy's identity; and the prescribing practitioner's identity. Or. Rev. Stat. § 431A.860. Approximately 700,000 prescription records are uploaded to the system annually.

Under Oregon law, prescription monitoring information submitted to the PDMP constitutes "protected health information" and is not subject to disclosure except in limited circumstances. Or. Rev. Stat. § 431A.865(1). For instance, practitioners and pharmacists may obtain prescription monitoring information where "the requested

8   OR. PRESCRIPTION DRUG MONITORING PROGRAM V. DEA

information is for the purpose of evaluating the need for or providing medical or pharmaceutical treatment for a patient to whom the practitioner or pharmacist anticipates providing, is providing or has provided care." *Id.* § 431A.865(2)(a)(A). Oregon law also authorizes the Oregon Health Authority to disclose prescription monitoring information "[p]ursuant to a valid court order based on probable cause and issued at the request of a federal, state or local law enforcement agency engaged in an authorized drug-related investigation involving a person to whom the requested information pertains." *Id.* § 431A.865(2)(a)(F).

### III. Procedural Background

In September 2012, the DEA issued two administrative subpoenas to the PDMP, seeking the records of one patient and two prescribing physicians. Oregon brought a declaratory judgment action in district court, seeking a declaration that "it cannot be compelled to disclose an individual's health information to the DEA pursuant to an administrative subpoena unless ordered by a federal court."[2]

Intervenors the ACLU Foundation of Oregon, four "John Doe" patients, and Dr. "James Roe," M.D., sought intervention as of right under Federal Rule of Civil

---

[2] In an earlier instance, after Oregon declined to honor an administrative subpoena in January 2012, the DEA obtained a court order enforcing the subpoena, which sought all covered prescriptions issued by a particular physician over the course of approximately seven months. *See* Order to Enforce DEA Administrative Subpoena, *United States v. Or. Prescription Drug Monitoring Program*, No. 3:12-mc-00298 (D. Or. Aug. 7, 2012). After the magistrate judge found that Oregon's court order requirement is preempted by the CSA, Oregon produced the records in compliance with the order.

OR. PRESCRIPTION DRUG MONITORING PROGRAM V. DEA    9

Procedure 24(a).[3]  They brought a claim distinct from Oregon's, namely that the DEA's use of administrative subpoenas violated Intervenors' asserted Fourth Amendment rights in certain private health information.  In furtherance of that claim, Intervenors also sought an injunction prohibiting the DEA from obtaining prescription records from the PDMP without securing a warrant supported by probable cause.  The district court granted the motion to intervene and Intervenors filed a complaint-in-intervention bringing their Fourth Amendment claim, as well as a co-extensive Administrative Procedure Act claim.

On cross-motions for summary judgment, the district court ruled that Intervenors did not need to establish their own standing to bring a Fourth Amendment claim but instead were required only to meet Rule 24(a)'s intervention criteria and to show that the claim was ripe.  The district court then held that the DEA's use of administrative subpoenas to obtain PDMP records constituted a Fourth Amendment violation.  Reasoning that unconstitutional federal statutes cannot preempt state law, the district court concluded that this finding also resolved the preemption issue, and thus it did not reach the preemption arguments raised by Oregon.  The DEA appealed.

---

[3] The four John Does each receive treatment with prescriptions for Schedule II-IV drugs that are filled in Oregon pharmacies and recorded in the PDMP.  Dr. Roe is an internist who primarily treats geriatric and hospice patients and thus prescribes more Schedule II-IV drugs than physicians in other practice areas.  Dr. Roe has been interviewed and investigated by the DEA in the past.

## Analysis

### I. Intervenors and the Standing Requirement

#### A. Intervenors Must Establish Standing Because They Seek Relief Different from Oregon

The threshold issue in this appeal is whether Intervenors must establish independent standing in order to pursue different relief from that sought by Oregon, the plaintiff. The answer is yes because the relief sought by Oregon is distinct from the relief sought by Intervenors.

After argument in this matter, the Supreme Court decided *Town of Chester*, which addresses the issue we face here, the requirement of intervenor standing. *See Town of Chester*, slip op. at 4–6. As the Supreme Court did in *Town of Chester*, it is useful to begin with first principles: "Article III of the Constitution limits the power of federal courts to deciding 'cases' and 'controversies.'" *Diamond v. Charles*, 476 U.S. 54, 61 (1986). "[T]he requirement that a claimant have standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (internal quotation marks omitted). This axiom ensures both that the legal issues presented to the court are sharpened by the presence of concrete adversity and that judicial review is sought by those who have a direct stake in the outcome. *Diamond*, 476 U.S. at 62 (citations omitted).

Accordingly, the Supreme Court has counseled that "[s]tanding is not dispensed in gross." *Davis*, 554 U.S. at 734 (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). Instead, "the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain

OR. PRESCRIPTION DRUG MONITORING PROGRAM V. DEA  11

whether the *particular plaintiff* is entitled to an adjudication of the *particular claims* asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984) (emphasis added), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). In other words, Article III requires "a plaintiff [to] demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis*, 554 U.S. at 734 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)) (internal quotation marks omitted).

This ineluctable requirement is not vitiated simply because an intervenor is raising a new or different claim for relief in the context of an existing case rather than bringing an original suit. However, until its decision in *Town of Chester*, the Court had not addressed the question whether an intervenor "must satisfy not only the requirements of Rule 24(a)(2), but also the requirements of Art[icle] III." *Diamond*, 476 U.S. at 68–69; *id.* at 68 n.21 (noting the varying conclusions of the Courts of Appeals). After reciting the constitutional foundation for standing analysis, the Court in *Town of Chester* reiterated that "standing is not dispensed in gross." *Town of Chester*, slip op. at 5 (quoting *Davis*, 554 U.S. at 734). The Court went on to explain that "[t]he same principle applies when there are multiple plaintiffs" and "to intervenors of right." *Id.* at 5–6. Put succinctly: "Although the context is different, the rule is the same." *Id.* at 6. The Court stated the rule as follows: "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Id.* This includes when the intervenor "seeks additional relief beyond that which the plaintiff requests." *Id.*

With the Supreme Court's newly-minted rule in mind, we examine the relief sought here. What Oregon wants is a declaration that—pursuant to Oregon law—a prior court order is required before the DEA can enforce an investigative subpoena. Oregon seeks a declaratory judgment that, because of Or. Rev. Stat. § 431A.865(2)(a)(F), "it cannot be compelled to disclose an individual's protected health information" without a federal court order finding that "the subpoena meets all relevant federal requirements." Oregon "asks this court to find that the Controlled Substances Act does *not* preempt [§ 431A.865(2)(a)(F)], except as to probable cause." Oregon acknowledges that § 431A.865(2)(a)(F)'s probable cause requirement is preempted and disclaims any reliance on the Fourth Amendment. Instead, Oregon's entire basis for relief rests on a state-law procedural argument, namely that the DEA must get a federal court to bless the subpoena before it is issued.

What Intervenors want is something very different—they want declaratory and injunctive relief "prohibiting the DEA from obtaining prescription records from the PDMP without securing a probable cause warrant." Intervenors' claim for relief is founded on the Fourth Amendment and its requirement of probable cause and a warrant. Intervenors explicitly declined to "take a position on the preemption issue" in their complaint-in-intervention. Intervenors do not dispute that they seek relief different from Oregon in the form of a requirement for a warrant supported by probable cause "*instead* of a subpoena."

The Supreme Court's decision lays to rest Intervenors' argument that they do not need to establish independent Article III standing to bring their Fourth Amendment claim. In accord with *Town of Chester*, we hold that where, as here,

the Intervenors seek to obtain different relief than the original plaintiff, the Intervenors must establish independent Article III standing. The Intervenors have not done so.

### B. Intervenors Lack Standing to Bring Their Fourth Amendment Claim

The DEA's two administrative subpoenas seek the records of a single patient and two prescribing physicians, not records related to any of the Intervenors. Intervenors have provided no evidence that the DEA is seeking or will seek any records related to them.[4] Like the plaintiffs in the Supreme Court's recent decision in *Clapper v. Amnesty International USA*, Intervenors' injuries are speculative and fail to qualify as "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *See* 133 S. Ct. 1138, 1147 (2013) (citations omitted). The Supreme Court explained that "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes . . . ." *Id.* (quoting *Lujan*, 504 U.S. at 565 n.2) (internal quotation marks omitted). Thus, "threatened injury must be *certainly impending* to constitute injury in fact, and . . . [a]llegations of *possible* future injury are not sufficient." *Id.* (alteration in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (internal quotation marks omitted). In *Clapper*, the Court found the plaintiffs' theory of injury too speculative because plaintiffs could not provide evidence that their communications with foreign contacts had been or would be

---

[4] While Dr. Roe speculates that the DEA will investigate his prescribing practices for his Oregon patients, he offers no concrete evidence to that end.

monitored by the government. 133 S. Ct. at 1148–50. Likewise, Intervenors are not under an impending threat of disclosure. We see no meaningful distinction between the nature of the claims asserted in *Clapper* and those here.

Nor can Intervenors establish standing via their fear of disclosure and the preventative measures they took to avoid disclosure. The John Does, who each take Schedule II–IV drugs subject to the CSA, declared that knowing the DEA could obtain their prescription records in the future without a warrant issued in compliance with the Fourth Amendment causes them psychological distress and could change their future behavior in seeking medical treatment. Similarly, Dr. Roe stated that the DEA and FBI previously investigated him in Washington State pursuant to Washington's drug monitoring program. He believes the investigation stemmed from information obtained without a probable cause warrant. Dr. Roe claims that the investigation, as well as the knowledge that he could also be investigated with respect to his Oregon patients, has made him more reluctant to prescribe Schedule II–IV drugs to his patients.

We acknowledge the particularly private nature of the medical information at issue here and thus do not question the seriousness of Intervenors' fear of disclosure. Nor do we imply that this concern is unreasonable. Nevertheless, we are bound by *Clapper*, which rejected a comparable argument. The Court held that plaintiffs' preventative measures taken out of fear of being surveilled did not establish standing, even if plaintiffs' fear was not unreasonable. As the Court observed,

> [t]he Second Circuit's analysis improperly allowed respondents to establish standing by asserting that they suffer present costs and burdens that are based on a fear of

> surveillance, so long as that fear is not "fanciful, paranoid, or otherwise unreasonable." This improperly waters down the fundamental requirements of Article III. Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing—because the harm respondents seek to avoid is not certainly impending. In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.

133 S. Ct. at 1151 (citation omitted). Thus, Intervenors lack standing to bring their Fourth Amendment claim and their related Administrative Procedure Act claim.

**II. Federal Preemption Under the Controlled Substances Act**

Having addressed Intervenors' claim, we are left with Oregon's claim that its statutory requirement for a court order does not conflict with federal law.

The Supremacy Clause gives Congress "the power to pre-empt state law expressly." *Hillman v. Maretta*, 133 S. Ct. 1943, 1949 (2013) (citation omitted). Congress did just that in the CSA, which contains an express preemption provision: state law is preempted whenever "there is a positive conflict between [a] provision of th[e CSA] and [a] State law so that the two cannot consistently stand together." 21 U.S.C. § 903. Because this carve-out is an express invocation of conflict preemption, we must determine whether "compliance with both federal and state regulations

is a physical impossibility," or the "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (internal quotation marks and citations omitted); *accord United States v. Zadeh*, 820 F.3d 746, 750–52 (5th Cir. 2016) (applying the "obstacle" test to hold that 21 U.S.C. § 876 preempts a provision of the Texas Occupations Code under § 903).

This case doesn't involve a physical impossibility, so instead we ask whether requiring a court order is a "sufficient obstacle" to the operation of 21 U.S.C. § 876. Our analysis of this question is "informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). Here, Congress enacted the CSA in part to "strengthen law enforcement tools against the traffic in illicit drugs." *Gonzales*, 545 U.S. at 10. The upshot of the statutory scheme is that the Attorney General can obtain testimony and documents through a subpoena and without a court order. *See* 21 U.S.C. § 876(a). A court order is needed only in the event of noncompliance ("contumacy . . . or refusal to obey") with the subpoena. *Id.* § 876(c).

Before disclosure of information, Oregon law interposes a significant obstacle—"a valid court order" in all cases in which a subpoena is issued. Or. Rev. Stat. § 431A.865(2)(a)(F). The statute provides that the Oregon Health Authority "shall disclose [prescription monitoring] information," *id.* § 431A.865(2)(a), "[p]ursuant to a valid court order based on probable cause and issued at the request of a federal, state or local law enforcement agency engaged in an authorized drug-related investigation involving a person to whom the requested information pertains," *id.* § 431A.865(2)(a)(F).

Oregon concedes that the probable cause requirement is preempted by federal law. Oregon states, however, that the "PDMP is required to wait for judicial review and a court order before it c[an] turn over the records."

Even assuming that the probable cause requirement is severable, the Oregon statute stands as an obstacle to the full implementation of the CSA because it "interferes with the methods by which the federal statute was designed to reach [its] goal." *Gade*, 505 U.S. at 103 (quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987)). By placing the initial burden of requiring a court order to enforce the subpoena upon the DEA, § 431A.865 interferes with the scheme Congress put in place for the federal investigation of drug crimes and thereby undermines Congress's goal of "strengthen[ing] law enforcement tools against the traffic in illicit drugs." *Gonzales*, 545 U.S. at 10. Consequently, we hold that the two provisions are in "positive conflict"—Or. Rev. Stat. § 431A.865 is preempted by 21 U.S.C. § 876. We note, however, that this result preserves Oregon's option to contest subpoenas for protected information and thus trigger the enforcement procedure described in § 876(c), a critical safeguard in light of the particularly important privacy interest implicated here.

**REVERSED.**